UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------- x
:
JILL FERGUSON,                           : Civil Action No. _____
on behalf of herself and                 :
similarly situated employees,            :
                                         : INDIVIDUAL AND
         *Plaintiff*,                    : COLLECTIVE/CLASS ACTION
                                         : COMPLAINT
         v.                              :
                                         :
AQUATECH INTERNATIONAL, LLC,             : Jury Trial Demanded
                                         :
         *Defendant*.                    : Electronically Filed
                                         :
------------------------------------------------------- X

## INDIVIDUAL AND COLLECTIVE/CLASS ACTION COMPLAINT

### Nature of the Action, Jurisdiction, and Venue

1. This is an individual and collective action under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207(a), an individual and class action under the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. §§ 333.104(c) & 333.113, and an individual action under the FLSA (retaliation) to recover damages for unpaid overtime compensation and for retaliatory discharge.

2. Jurisdiction of this court is invoked under 28 U.S.C. § 1331 and, for the supplemental state claim, 28 U.S.C. § 1367(a).

3. The actions and policies alleged to be unlawful were committed in and around Canonsburg, Pennsylvania, where Plaintiff worked and where Defendant regularly conducts business. This action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

## Parties

4. **Plaintiff Jill Ferguson** resides in Upper St. Clair, Pennsylvania. Plaintiff worked for Defendant Aquatech International, LLC, from September 2014 until on or about January 11, 2018.

5. **Defendant Aquatech International, LLC,** is a privately held company and a leading global provider of industrial and infrastructure water treatment solutions and services. Defendant maintains its North America – Corporate Headquarters at One Four Coins Drive, Canonsburg, PA 15317.

## Statement of Claims

6. Defendant employed Plaintiff from on or about September 8, 2014 until on or about January 11, 2018.

7. Defendant hired Plaintiff for the position of Payroll Specialist in Defendant's Canonsburg, PA, office in September 2014 following a three month temporary assignment from June 2014 to September 2014.

8. Plaintiff remained in this position until she was terminated on or about January 11, 2018.

9. Plaintiff reported to the Financial Controller, and that individual reported to the Vice President of Finance.

10. Plaintiff was paid a salary of about $58,000 over the past three years, plus bonuses.

11. The bonuses were based on Aquatech's performance and were promised to be paid, and were paid, on a quarterly basis so long as Aquatech met certain defined benchmarks.

12. The bonuses paid to Plaintiff averaged about $1,300 per year the last three years of her employment.

13. The bonuses are "non-discretionary" bonuses within the meaning of the FLSA and the PMWA.

14. Plaintiff worked more than 40 hours in most workweeks from the time she began her employment until she was terminated in January 2018.

15. Plaintiff was not paid overtime.

16. Rather, Defendant classified Plaintiff as exempt from overtime under the FLSA and PMWA.

17. From the time she was first hired in 2014 until she was terminated in January 2018 Plaintiff's primary duty was to fill out spreadsheets and use other administrative software, and to work closely with the third-party administrator hired for payroll (ADP and/or Paycom), to make sure Aquatech's employees (at all Aquatech locations) were paid.

18. Plaintiff performed these duties mostly from the Aquatech office in Canonsburg where she was assigned.

19. Plaintiff also performed some of these duties from home using company-provided equipment and software.

20. Plaintiff's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

21. Rather, Plaintiff's primary duty was to process payroll for Defendant's employees and to do so in accordance with explicit guidelines given to her by management and in accordance with the software and protocols established by management and by the third-party payroll

administrator (ADP or Paycom).

22. Plaintiff's primary duty did not require advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

23. Rather, Plaintiff was only required to acquire and apply knowledge about the hours worked by Aquatech's employees and how to make sure they were paid, and to follow the guidelines and protocols established by management and the third-party payroll administrator in doing so.

24. Plaintiff did not write these guidelines or protocols, and did not have discretion to change these guideline or protocols or to do anything other than follow them.

25. Plaintiff supervised no one.

26. Plaintiff was scheduled to work a shift from 8:00 a.m. to 5:00 p.m. five days per week, with an assumed sixty-minute lunch break at the office.

27. Thus, the scheduled work shift was for 8 hours of work each day with the presumed one-hour lunch break making it a nine-hour shift.

28. Plaintiff almost always ate lunch while working at her desk.

29. Plaintiff rarely, if ever, took an uninterrupted lunch break.

30. Thus, Plaintiff's actual work day at the office (hours she was working, not merely scheduled) was normally a minimum of 9 hours per day.

31. Management knew Plaintiff rarely took an uninterrupted lunch break.

32. Management knew this from the personal observations of Plaintiff's managers and/or from the electronic records of Plaintiff's work, e.g., phone records, e-mails, computer log records.

33. In addition to the time spent working at the office Plaintiff also had to work from home in the evenings and on the weekends as necessary to complete her work.

34. Plaintiff frequently did not have time during her scheduled shift to complete the work required for her job.

35. As a result, Plaintiff normally arrived before the start of her shift each day and after the scheduled end of her shift each day in order to try to complete her work. Thus, Plaintiff worked an average 9.5 to 10 hours per day at the office.

36. Defendant knew that Plaintiff was arriving at work before her shift started, and leaving after her shift ended, and working evenings and on the weekends, because the other salaried employees similarly situated to Plaintiff at the Canonsburg facility (see ¶ 37) also normally worked before the start of their scheduled shifts and after the end of their scheduled shifts and from home in the evenings and on the weekends; because management saw Plaintiff regularly arrive early and leave late and saw the other similarly situated employees arrive early and leave late; and, because management monitored the work that Plaintiff, and the other similarly situated employees, was performing.

37. The similarly situated employees for purposes of this action are the salaried employees at the Canonsburg facility performing non-exempt work who were also not paid overtime due to the fact they were subject to the same common policy of classifying them as exempt simply because they were paid a salary, namely: three (3) or so accountants, five (5) or so purchasing agents, two or three (2 or 3) clerks, two (2) or so marketing employees and more than twenty (20) engineers.[1]

---

[1] This collective/class of similarly situated employees is referred to generally throughout the Complaint as "similarly situated salaried employees performing non-exempt work." "Non-exempt work" as used in this Complaint refers to jobs that do not, as their primary duty, involve the supervision of two or more full-time employees; do not involve the exercise of discretion and independent judgment on matters of significance; and, do not require advanced knowledge acquired by a prolonged course of specialized intellectual instruction.

38. Management never instructed Plaintiff, or the other similarly situated salaried employees performing non-exempt work, not to work before and after the scheduled shifts, through the lunch breaks or in the evenings or on the weekends.

39. Rather, management suffered and permitted Plaintiff and the other similarly situated salaried employees performing non-exempt work to work these extra hours at no additional cost to Defendant and for Defendant's pecuniary benefit.

40. Defendant also knew that Plaintiff and the other similarly situated salaried employees performing non-exempt work were working evenings and on the weekends because Defendant provided Plaintiff and the other similarly situated salaried employees with a company laptop, which was used at night and on the weekends, and/or suffered and permitted these employees to access Defendant's website from phones or personal devices for the benefit of Defendant.

41. Most of the time Plaintiff and the other similarly situated salaried employees performing non-exempt work were required, whether working at the office or away from the office, to log into Defendant's intranet portal.

42. The other similarly situated salaried employees performing non-exempt work (see ¶ 37), like Plaintiff, also used company-provided computers and software programs, or accessed Defendant's website from personal devices, to perform most of their duties.

43. On average, Plaintiff worked between 45 and 55 hours per week.

44. There were also numerous times when Plaintiff had to work in excess of 55 hours per week in order to complete her assigned work.

45. The other similarly situated salaried employees performing non-exempt work (see ¶ 37) also worked on average between 45 and 55 hours per week, sometimes far in excess of that during busy times of the year.

46. Defendant did not pay overtime compensation – at a premium rate or any other rate - to Plaintiff for any of the worktime in excess of 40 hours in any workweek.

47. Defendant did not pay overtime compensation – at a premium rate or any other rate – to the other similarly situated salaried employees performing non-exempt work.

48. Defendant did not compensate Plaintiff at one-and-one-half times her regular rate of pay for hours she worked in excess of forty hours in any workweek.

49. Defendant did not compensate the similarly situated salaried employees performing non-exempt work at one-and-one-half times their regular rate of pay.

50. Defendant did not pay Plaintiff for hours worked in excess of forty hours in any workweek because Defendant classified Plaintiff as "exempt" from the overtime requirements of the FLSA and PMWA.

51. Defendant classified Plaintiff as exempt based simply on the fact Plaintiff was paid a salary.

52. Defendant did not pay the similarly situated salaried employees performing non-exempt work any overtime pay or premium pay because Defendant classified these employees as exempt from the overtime requirements of the FLSA and PMWA.

53. Defendant classified the similarly situated salaried employees performing non-exempt work as exempt simply on the basis that the similarly situated employees were paid a salary.

54. The classification was incorrect.

55. Plaintiff was not exempt under any of the relevant white collar exemptions (professional, executive or administrative).

56. Plaintiff did not perform the duties or have the qualifications required under the white

collar exemptions (professional, executive or administrative).

57. The similarly situated salaried employees performing non-exempt work did not perform the duties or have the qualifications required under the white collar exemptions (professional, executive or administrative).

58. Defendant knew the classification was incorrect and knew its misclassification violated the FLSA.

59. In the alternative, Defendant acted in reckless disregard of and indifference toward the FLSA by failing to make good-faith effort to evaluate Plaintiff's job duties or the job duties of the similarly situated salaried employees performing non-exempt work vis-à-vis the FLSA's exemptions.

60. Plaintiff did not qualify for the executive exemption because she did not supervise other employees and did not have the authority to hire and fire employees.

61. Plaintiff did not qualify for the administrative exemption because her primary job duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

62. Plaintiff did not qualify for the professional exemption because her primary job duty did not require her to have advanced knowledge acquired by a prolonged course of specialized intellectual instruction.

63. The similarly situated salaried employees performing non-exempt work did not qualify for the executive, administrative or professional exemptions for the same reasons Plaintiff did not: they did not supervise anyone, they did not as a primary duty exercise discretion and judgment with respect to matters of significance, and their primary duty did not require them to have advanced knowledge acquired by a prolonged course of specialized intellectual instruction.

64. Defendant also failed to maintain accurate records of the time worked by Plaintiff.

65. Defendant also failed to maintain accurate records of the time worked by the similarly situated salaried employees performing non-exempt work.

66. Plaintiff also has an individual claim for retaliation under the FLSA.

67. Beginning in or about September 2014 and continuing on a regular basis afterwards, Plaintiff complained about certain practices that are illegal under the FLSA.

68. Specifically, Plaintiff regularly raised concerns about the fact Defendant was simply classifying employees, such as herself and the other similarly situated salaried employees performing non-exempt work (see ¶ 37), as exempt because the employees were being paid a salary.

69. Plaintiff complained about these practices, and expressed her opinion the company was violating the FLSA, not only with respect to herself but the other similarly situated salaried employees performing non-exempt work (see ¶ 37) as well.

70. Plaintiff documented these complaints.

71. Notwithstanding these regular complaints Defendant refused to change the classification of certain salaried employees from exempt to non-exempt, or even conduct a good faith evaluation to determine if such a change were required.

72. Rather, on or about January 11, 2018, Plaintiff was terminated.

73. Management told Plaintiff she was being terminated because she was not reporting time correctly.

74. The alleged infraction concerned Plaintiff's taking and recording PTO.

75. The reason given for the termination was false.

76. Plaintiff complied fully with Defendant's protocols for PTO.

77. Even assuming Plaintiff had failed to record PTO correctly the alleged infraction did not rise to the level sufficient to be terminated.

78. The real reason for the termination was because of Plaintiff's regular complaints about the fact Defendant was classifying employees at Canonsburg as exempt simply because the employees were being paid a salary and that this policy violated the FLSA.

79. Defendant's policy of misclassifying Plaintiff and the other similarly situated salaried employees performing non-exempt work (see ¶ 37), not maintaining accurate time records and failing to pay overtime wages due in overtime workweeks were a violation of the FLSA and PMWA.

80. Defendant knowingly and intentionally violated the FLSA's explicit requirement at 29 U.S.C. §211(c) that it maintain accurate records of time worked, and at 29 U.S.C. §207(a) that it pay for overtime worked.

81. Defendant also knowingly and intentionally violated the FLSA's explicit prohibition against retaliation at 29 U.S.C. §215(a) with respect to Plaintiff.

### Collective/Class Action Averments

82. Plaintiff incorporates by reference paragraphs 1-81, above.

83. In the past three years Defendant has employed more than 30+ individuals as salaried employees performing non-exempt work subject to the same policy of classifying them as exempt simply because they are salaried (see ¶ 37).

84. These salaried employees performing non-exempt work are subject to the same policy of classifying them as exempt based strictly on the basis of being paid a salary regardless of

the fact these employees perform non-exempt work.

85. These similarly situated salaried employees performing non-exempt work, like Plaintiff, have worked from the Canonsburg, PA, office since 2015 and have reported up to the same corporate management as Plaintiff.

86. These similarly situated salaried employees performing non-exempt work were also not paid overtime, like Plaintiff, and work a shift from 8:00 a.m. to 5:00 p.m. five days per week, with an assumed sixty-minute lunch break.

87. The similarly situated salaried employees performing non-exempt work, however, normally ate lunch while working at their desks.

88. The similarly situated salaried employees performing non-exempt work normally do not take a half-hour uninterrupted lunch break.

89. Management knew the similarly situated salaried employees performing non-exempt work rarely took an uninterrupted lunch break.

90. Management knew this from the personal observations and/or from the electronic records of the similarly situated salaried employees' work, e.g., phone records, e-mails, computer log records.

91. This means the similarly situated salaried employees performing non-exempt work normally work in excess of 40 hours each week if all they do is work the scheduled shifts (9 hours x 5 = 45 hours).

92. These similarly situated salaried employees performing non-exempt work are also regularly unable to complete their assigned duties, such as the paperwork, during their regularly scheduled shifts.

93. These similarly situated salaried employees performing non-exempt work, like Plaintiff,

regularly arrive early (preliminary work) and leave late (postliminary work) in order to complete their duties.

94. These similarly situated salaried employees performing non-exempt work, like Plaintiff, regularly work at home in the evenings and on weekends in order to complete their duties.

95. These similarly situated salaried employees performing non-exempt work use the same intranet portal to perform their job duties as does Plaintiff.

96. Management has known for at least the past three years that these similarly situated salaried employees performing non-exempt work regularly arrive at work and perform work before the start of their shift (preliminary work), work during the "lunch-breaks," leave after the end of their shifts (postliminary work), and work at home or otherwise away from the office during the evenings and on the weekends.

97. These similarly situated salaried employees performing non-exempt work are paid an annual salary.

98. These similarly situated salaried employees performing non-exempt work, like Plaintiff, are also paid quarterly bonuses.

99. These bonuses, like the bonuses for Plaintiff, are non-discretionary bonuses within the meaning of the FLSA and PMWA.

100. These similarly situated salaried employees performing non-exempt work regularly work more than forty hours per week.

101. These similarly situated salaried employees performing non-exempt work do not receive overtime compensation either on their salaries or their bonuses.

102. Defendant has not compensated these salaried employees performing non-exempt work at

one-and-one-half times their regularly rates of pay for hours they worked in excess of forty hours in a single workweek.

103. Defendant has not paid these similarly situated salaried employees performing non-exempt work for hours worked in excess of forty hours because Defendant classified these similarly situated salaried employees performing non-exempt work as "exempt" from the overtime requirements of the FLSA.

104. These similarly situated salaried employees performing non-exempt work do not have as their primary duty work that includes the exercise of discretion and independent judgment with respect to matters of significance.

105. Rather, the primary duty of the similarly situated salaried employees performing non-exempt work mostly involves the application of well-established techniques, procedures or standards described in manuals and other sources provided by Aquatech to the salaried employees performing non-exempt work.

106. The primary duty of these similarly situated salaried employees performing non-exempt work also does not require advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

107. Rather, the similarly situated salaried employees performing non-exempt work generally are only required to acquire and apply knowledge about Aquatech's products and services that is available from internal Aquatech documents (manuals, specifications, written updates), industry standards and generally accepted norms in the industry, and from inquiring with internal Aquatech sources.

108. These similarly situated salaried employees performing non-exempt work supervise <u>no one</u>.

109. These similarly situated salaried employees performing non-exempt work do not qualify for the executive, administrative, or professional exemptions of the FLSA or PMWA.

110. These similarly situated salaried employees performing non-exempt work are, and have been, non-exempt.

111. Defendant knew its policy of classifying the similarly situated salaried employees who perform non-exempt work as exempt simply because they were paid a salary was a violation of the FLSA and PMWA.

112. Defendant knew the classification was incorrect and knew its misclassification violated the FLSA and PMWA.

113. In the alternative, Defendant has acted in reckless disregard of and indifference toward the FLSA and PMWA by failing to make a good-faith effort to evaluate whether these similarly situated salaried employees' job duties satisfy the FLSA's exemptions.

## COUNT I:  VIOLATION OF THE FLSA
### Individual and Collective Action

114. Plaintiff incorporates by reference paragraphs 1 through 113 of this complaint as though the same were more fully set forth herein.

115. Plaintiff and all other similarly situated salaried employees performing non-exempt work (see ¶ 37) are employees of Defendant within the meaning of the FLSA.

116. Defendant is an employer within the meaning of the FLSA.

117. Plaintiff and all other similarly situated salaried employees performing non-exempt work have been improperly classified as exempt from the overtime provisions of the FLSA.

118. Plaintiff and all other similarly situated salaried employees performing non-exempt work have been improperly classified as exempt from the overtime provisions of the FLSA since at least April 2015 as a result of the common policy of classifying them as exempt simply

because they are paid a salary.

119. Plaintiff and all other similarly situated salaried employees performing non-exempt work should have been classified as non-exempt from no later than April 2015 through the present.

120. Plaintiff and all other similarly situated salaried employees performing non-exempt work have regularly worked more than forty hours per week.

121. Defendant did not pay any overtime compensation, either on their salaries or bonuses, to Plaintiff and all other similarly situated salaried employees performing non-exempt work when they worked more than forty hours in workweeks since April 2015.

122. Defendant's failure to pay overtime to Plaintiff and all other similarly situated salaried employees performing non-exempt work has violated the FLSA.

123. For at least the past three years, Defendant's violations of the FLSA have been knowing, willful, and in reckless disregard of the FLSA's overtime requirements.

124. Plaintiff and all other similarly situated salaried employees performing non-exempt work are entitled to recover from Defendant the overtime pay improperly withheld by Defendant, plus interest, attorneys' fees, and costs.

125. Plaintiff and all other similarly situated salaried employees performing non-exempt work are also entitled to recover liquidated damages.

### COUNT II:  VIOLATION OF THE PMWA
### Individual and Class Action

126. Plaintiff incorporates by reference paragraphs 1 through 125 of this complaint as though the same were more fully set forth herein.

127. Plaintiff and all other similarly situated salaried employees performing non-exempt work (see ¶ 37) are employees of Defendant within the meaning of the PMWA.

128. Defendant is an employer within the meaning of the PMWA.

129. Plaintiff and all other similarly situated salaried employees performing non-exempt work have been improperly classified as exempt from the overtime provisions of the PMWA since at least April 2015 as a result of the common policy of classifying them as exempt simply because they are paid a salary.

130. Plaintiff and all other similarly situated salaried employees performing non-exempt work should have been classified as non-exempt since at least April 2015 through the present.

131. Plaintiff and all other similarly situated salaried employees performing non-exempt work have regularly worked more than forty hours per week.

132. Defendant has not paid overtime compensation to Plaintiff and all other similarly situated salaried employees performing non-exempt work when they worked more than forty hours in workweeks since April 2015.

133. Defendant's failure to pay overtime to Plaintiff and all other similarly situated salaried employees performing non-exempt work has violated the PMWA.

134. For at least the past three years, Defendant's violations of the PMWA have been knowing, willful, and in reckless disregard of the PMWA's overtime requirements.

135. Plaintiff and all others similarly situated salaried employees performing non-exempt work are entitled to recover from Defendant the overtime pay improperly withheld by Defendant, plus interest, attorneys' fees, and costs.

## COUNT III: VIOLATION OF THE FLSA (Retaliation)
### Individual

136. Plaintiff incorporates by reference paragraphs 1 through 135 of this complaint as though the same were more fully set forth herein.

137. Plaintiff is an employee of Defendant within the meaning of the FLSA.

138. Defendant is an employer within the meaning of the FLSA.

139. Plaintiff engaged in a protected activity: complained about the fact Defendant had a policy of classifying employees as exempt simply because the employees were being paid a salary and that, in fact, certain employees (the similarly situated salaried employees performing non-exempt work in this matter) were non-exempt.

140. Plaintiff suffered an adverse action following the protected acts (termination).

141. There is a causal connection between the protected acts and the adverse employment action.

142. There is no bona fide business reason for the adverse action.

143. Defendant's retaliation against Plaintiff is in violation of the FLSA.

144. Defendant's violation of the FLSA is knowing, willful, and in reckless disregard of the FLSA.

145. Plaintiff is entitled to recover from Defendant the value of the lost wages, benefits, pre-judgment and post-judgment interest, compensatory damages, attorneys' fees, and costs.

146. Plaintiff is also entitled to recover liquidated damages under 29 U.S.C. §§ 207(a) & 216(b).

## **PRAYER FOR RELIEF**

147. WHEREFORE, Plaintiff and all other similarly situated salaried employees performing non-exempt work subject to the common policy of classifying them as exempt simply because they were paid a salary (see ¶ 37) respectfully request that this Court:

   A. order Defendant to pay compensatory damages equal to the unpaid overtime compensation owed to Plaintiff and all other similarly situated salaried employees performing non-exempt work;

   B. order Defendant to pay liquidated damages to Plaintiff and all other similarly situated salaried employees performing non-exempt work;

   C. order Defendant to pay pre- and post-judgment interest as well as the litigation costs and reasonable attorneys' fees incurred by Plaintiff and all other similarly situated salaried employees performing non-exempt work; and

   D. grant such further relief as the Court deems necessary and proper.

Respectfully submitted,

s/Joseph H. Chivers
Joseph H. Chivers, Esq.
PA ID No. 39184
First & Market Building
Suite 650
100 First Avenue
Pittsburgh, PA  15222-1514
jchivers@employmentrightsgroup.com
Tel: (412) 227-0763/Fax: (412) 774-1994

John R. Linkosky, Esq.
PA ID No. 66011
JOHN LINKOSKY & ASSOCIATES
715 Washington Avenue
Carnegie, PA  15106
linklaw@comcast.net
Tel.:  (412) 278-1280/Fax:  (412) 278-1282

*Counsel for Plaintiff
and all others similarly situated*

Dated: April 11, 2018